IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTHONY RAY WILEY, )<br>)<br>        Petitioner   )<br>)<br>vs.                           )<br>)<br>MARTY SIRMONS, Warden, )<br>)<br>        Respondent  ) | Case No. CIV-05-1231-L |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. A response to the petition has been filed, and Petitioner has filed a reply. Thus, the case is at issue. Pursuant to an order entered by United States District Judge Tim Leonard, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, it is recommended that the petition be denied.

By this action, Petitioner challenges his conviction following a jury trial for aggravated attempting to elude a police officer and leaving the scene of an injury accident, both after former conviction of two or more felonies, for which he was sentenced to two concurrent twenty-five year terms of imprisonment. Case No. CF-2002-5616, District Court of Oklahoma County. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals affirmed. Petition, p. 2; Case No. F-2003-1119, Oklahoma Court of Criminal Appeals (Summary Opinion, July 7, 2004) (attached to Response). Thereafter, Petitioner filed an application for state post-conviction relief, and the application was denied on June 22, 2005. Petition, p. 4. Petitioner appealed, and the

Oklahoma Court of Criminal Appeals affirmed on September 16, 2005. Case No. PC-2005-0687, Oklahoma Court of Criminal Appeals (Sept. 16, 2005) (Order Affirming Denial of Post-Conviction Relief) (attached to Petition).

## I. INTRODUCTION

On October 3, 2002, at dusk, Officer Wayne Barney observed a Honda Prelude which appeared to be speeding and went left of center as it made a turn. After he turned his vehicle around to follow the Prelude, Officer Barney activated his lights and siren in an attempt to initiate a traffic stop. The driver of the Honda Prelude, later identified as Petitioner, did not stop the car, leading Officer Barney and other officers with the Oklahoma City Police Department on a chase through residential neighborhoods. The Prelude crashed into a car driven by Barbara Glover in the intersection of Northeast 23rd Street and Kate. After continuing for a few blocks, the Honda Prelude stopped and a black male exited from the passenger-side door and ran. Seconds later Petitioner emerged from the driver's-side door and also ran. Petitioner was apprehended by police after a short chase on foot. He was charged with aggravated attempting to elude a police officer and leaving the scene of an accident with personal injury, as well as driving while under the influence. He was convicted on the charges of aggravated attempt to elude a police officer and leaving the scene of an accident with personal injury, both after former conviction of two or more felonies.

## II. STANDARD GOVERNING APPLICATIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413; see also Wiggins v. Smith, 539 U.S. 510, 520 (2003).  It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. Williams, 529 U.S. at 410-11; Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir.), cert. denied, 543 U.S. 1008 (2004).

## III. DISCUSSION

Petitioner raises five grounds for relief.  In Ground One, he argues, as he did on direct appeal, that the evidence was insufficient to support his conviction. Petition, p. 6. In Ground Two, Petitioner argues that the was denied the effective assistance of trial counsel. Petition, p. 7.  In Ground Three, Petitioner asserts a claim for the ineffective assistance of appellate counsel. Petition, p. 9. In Ground Four, Petitioner alleges that his due process rights were violated by the Oklahoma Court of Criminal Appeals' application

of a new law to his case on direct appeal. Petition, p. 11. In Ground Five, Petitioner argues that he is actually innocent. Petition, p. 11a. Petitioner raised Grounds Two through Five for the first time on post-conviction. The Oklahoma Court of Criminal Appeals concluded that other than Petitioner's ineffective assistance of appellate counsel claim, that the claims were barred because they had not been raised on direct appeal. The Oklahoma Court of Criminal Appeals further concluded that Petitioner's appellate counsel was not constitutionally ineffective.[1]

At the outset the undersigned notes that Petitioner's Ground One and his Ground Four are related, such that the claims are best addressed in conjunction with one another. In Ground One Petitioner argues that the evidence was not sufficient to support his conviction. In Ground Four he argues that in ruling on his sufficiency of the evidence claim on direct appeal, the Oklahoma Court of Criminal Appeals relied on a new rule, thereby violating his due process rights. Logically, resolution of the second issue, the Oklahoma Court of Criminal Appeals' reliance on a new law, may impact the Court's consideration of Petitioner's sufficiency of the evidence claim. Accordingly, the undersigned will consider Ground Four first.

To the extent Respondent argues that Ground Four is procedurally barred or that Petitioner failed to make an adequate argument with regard to Ground Four, the undersigned rejects Respondent's contentions. The petition adopts Petitioner's post-conviction application as its substantive arguments, from which it is apparent that

---

[1] In Petitioner's post-conviction brief he argues about the Oklahoma Court of Criminal Appeals' treatment of ineffective assistance of appellate counsel claims, asserting that the Oklahoma Court of Criminal Appeals routinely fails to consider such claims. As noted, the Oklahoma Court of Criminal Appeals considered Petitioner's ineffective assistance of appellate counsel claim on the merits.

Petitioner is complaining about the substantive law applied to his claims with regard to circumstantial evidence. Additionally, because Petitioner is complaining about the analysis conducted by the Oklahoma Court of Criminal Appeals on direct appeal, this claim necessarily could not have been raised on direct appeal.

   **A. DUE PROCESS**

In Ground Four, Petitioner asserts that his due process rights were violated because the Oklahoma Court of Criminal Appeals applied Easlick v. State, 90 P.3d 556, 559 (Okla. Crim. App. 2004), decided during the pendency of his direct appeal, to his appeal.[2] Petitioner contends that the application of Easlick violated his due process rights because the Court in Easlick abandoned the "reasonable hypothesis" test in cases premised entirely on circumstantial evidence, which standard would have been more favorable to Petitioner's case.

At the time Petitioner committed his crimes, Oklahoma law required that cases proven by circumstantial evidence exclude every reasonable hypothesis other than guilt. See Sies v. State, 117 P. 504, 505 (Okla. Crim. App. 1911); overruled by, Easlick, 90 P.3d at 559; Hooks v. State, 19 P.3d 294, 305 (Okla. Crim. App. 2001)("Circumstantial evidence must exclude every reasonable hypothesis other than guilt."). In Rogers v. Tennessee, 532 U.S. 451 (2001), the Supreme Court considered the applicability of ex post facto principles to judicial decision making.

> [D]ue process limitations on the retroactive application of judicial interpretations of criminal statutes only apply to those [decisions] that are

---

[2] This claim was ground two in Petitioner's post-conviction brief.

> unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.

Rogers, 532 U.S. at 461 (internal quotations omitted). "The test for determining whether the retroactive application of a judicial decision violates due process is essentially one of foreseeability. A decision is unforeseeable if it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue.'" United States v. Morehead, 959 F.2d 1489, 1512 (10th Cir.) (quoting Bouie v. City of Columbia, 378 U.S. 347, 354 (1964)), reh'g en banc granted in part on other grounds sub nom. United States v. Hill, 971 F.2d 1461 (10th Cir.1992).

The undersigned need not decide whether the Oklahoma Court of Criminal Appeals' decision to abandon the reasonable hypothesis test in Easlick was foreseeable or whether its application violated Petitioner's due process rights, because even assuming that it did, the error was harmless in light of the evidence. See Clark v. Brown, 442 F.3d 708, 726 (9th Cir. 2006) (conducting harmless error analysis on issue of retroactive application of judicial law).

Under the pre-Easlick standard, a conviction based solely on circumstantial evidence was subject to the "reasonable hypothesis" test, which required that the evidence exclude every reasonable hypothesis other than guilt. See Sies v. State, 117 P. 504, 505 (Okla. Crim. App. 1911); Hooks v. State, 19 P.3d 294, 305 ("Circumstantial evidence must exclude every reasonable hypothesis other than guilt."). Had the Oklahoma Court of Criminal Appeals employed this test in analyzing Petitioner's conviction it would have concluded that the evidence was sufficient to sustain Petitioner's conviction, because the evidence both established beyond a reasonable doubt

that Petitioner was driving the car and excluded every reasonable hypothesis but Petitioner's guilt.

Under Oklahoma law, to convict a person on a charge of aggravated attempting to elude police, the State must prove that the defendant was the operator of the vehicle. Okla. Stat. tit. 21 § 540. To convict a person of leaving the scene of an accident with personal injury, the State must prove that the defendant was the "driver." Okla. Stat. tit. 47 § 10-104. When construed in the light most favorable to the State, the evidence was more than sufficient to establish that Petitioner was the operator/driver of the Honda Prelude on October 3, 2002, and the evidence supports no other reasonable inference.

Officer Wayne Barney who initiated the stop of the Honda Prelude described the person who exited the driver's side of the car as a "black male, medium build, . . . yellow shirt and he was wearing a brimmed hat of some kind and shorts." Tr. Vol. II, p. 56-57. Officer Barney pursued the person on foot, and although he lost sight of the person for "probably not more than maybe a second" during the chase, he quickly located the person wearing the same clothes and continued his pursuit. Tr. Vol. II, p. 57, 58. The person who emerged from the passenger side of the car was described by Officer Barney as a black male with two ponytails as part of a distinctive hairdo. Tr. Vol. II, p. 56, 97. He wore a white shirt and jeans. Tr. Vol. II, p. 56. No one matching this description was ever apprehended. Tr. Vol. II, p. 56. Officer Barney identified Petitioner as the person chased and apprehended on October 3, 2002. Tr. Vol. II, p. 61-62. He testified that there was no doubt in his mind that Petitioner was the person who exited the car from the driver's seat. Tr. Vol. II, p. 62.

Officer James Doyle testified that he was at most five feet away from the car when Petitioner stepped out of the driver's-side door only seconds after the car stopped. Tr. Vol. II, p. 107-09. He testified that he was 100% certain that the person they were chasing, Petitioner, was the person who exited the driver's side of the car. Tr. Vol. II, p. 110. On cross-examination Officer Doyle testified that "the driver of the vehicle that I saw exit out of the vehicle is the same person apprehended at the scene on Lottie," which was Petitioner. Tr. Vol. II, p. 122.

Lieutenant Butler, who interviewed Petitioner after his arrest, noted that he had no ponytails in his hair at the time of his arrest. Tr. Vol. II, p. 144. His hair was in corn rows, the same as it was at trial. Tr. Vol. II, p. 144. She also testified that when she asked him why he did not stop the car when he saw the officer's lights, he stated that "D," who Petitioner indicated was the passenger, told him to run and not to stop. Tr. 140. When questioned by defense counsel whether Petitioner's statements could have referred to his running on foot, rather than his failure to stop the car, Lieutenant Butler testified that she believed Petitioner was referencing the driving of the car. Tr. Vol. II, p. 168-69, 175. She further testified on both direct and cross-examination that she asked Petitioner specifically why he did not stop the vehicle when he saw the officer's lights and heard the siren, and his response was as indicated above. Tr. Vol. II, p. 140, 169, 175, 177.

Taken in the light most favorable to the prosecution these facts support the inference that Petitioner was driving the car, and as required by Oklahoma law at the time of Petitioner's conviction, the evidence was sufficient to exclude every reasonable hypothesis except that of guilt. Based on the evidence presented, it is not reasonable to

conclude that Petitioner was merely a passenger in the car, especially when a person emerged from the passenger-side door shortly before Petitioner emerged from the driver's-side door. There is no evidence, nor would it be reasonable to conclude, that the men crossed over one another on their way out of the car while preparing to run from the police officers on foot. Therefore, because it was harmless for the Oklahoma Court of Criminal Appeals to apply the more deferential standard of Jackson v. Virginia, 443 U.S. 307, 319 (1979), on appellate review to Petitioner's sufficiency of the evidence claim, Petitioner is not entitled to habeas corpus relief on his due process claim, Ground Four.[3]

### B. SUFFICIENCY OF THE EVIDENCE

In Ground One, Petitioner challenges the Oklahoma Court of Criminal Appeals' determination that the evidence presented was sufficient beyond a reasonable doubt to find him guilty based on the conclusion that he was driving the car. The Oklahoma Court of Criminal Appeals considered and rejected this claim on direct appeal. In reviewing the sufficiency of the evidence for purposes of federal habeas corpus relief, clearly established Supreme Court precedent provides that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Romano v.

---

[3] Petitioner has never argued that the trial court erred in instructing the jury on circumstantial evidence. The Oklahoma Uniform Jury Instructions - Criminal (2d Edition 1996), 9-5, which was presumably included in the jury instructions, instructs jurors that "All of the facts and circumstances, taken together, must be inconsistent with any reasonable theory or conclusion of a defendant's innocence." Oklahoma Uniform Jury Instruction - Criminal 9-5. Pursuant to the April 4, 1996 Order Adopting Amendments to the Oklahoma Uniform Jury Instructions - Criminal, this instruction would have been used unless determined to be inaccurate as a result of statutory changes or intervening caselaw. At the time of Petitioner's conviction, Oklahoma Uniform Jury Instructions - Criminal 9-5 accurately reflected the law on circumstantial evidence.

Gibson, 239 F.3d 1156, 1164 (10th Cir. 2001). In applying this standard, the reviewing court may not weigh conflicting evidence or consider the credibility of witnesses. Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Rather, the court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Id.

As set forth above, the evidence presented, when construed in the light most favorable to the State, supports the jury's conclusion that Petitioner was driving the car on October 3, 2002. Additionally, because the evidence was sufficient to meet the more onerous "reasonable hypothesis" test, it was also sufficient to meet the Jackson standard. Romano, 239 F.3d at 1164. Accordingly, the undersigned recommends that habeas corpus relief be denied on Petitioner's Ground One, because the Oklahoma Court of Criminal Appeals' determination on his sufficiency of the evidence claim was not contrary to or an unreasonable application of Jackson.

### B. GROUNDS TWO, THREE, AND FIVE

In Ground Two, Petitioner argues that he was denied the effective assistance of trial counsel,[4] while in Ground Five, Petitioner alleges a claim of actual innocence.[5] Petitioner first raised these claims on post-conviction, and the Oklahoma Court of Criminal Appeals concluded that the claims were waived because Petitioner had failed to raise them on direct appeal. Petitioner asserts that ineffective assistance of appellate counsel was the cause of his failure to raise these issues on appeal, and thus his claims should be considered on the merits.

---

[4] This claim was ground one in Petitioner's post-conviction brief.

[5] This claim was ground three in Petitioner's post-conviction brief.

1.     **The Doctrine of Procedural Default**

On habeas review, federal courts will not review claims that have been defaulted in state courts on an independent and adequate state procedural ground unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively demonstrates a fundamental miscarriage of justice. Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998). "'A state court's finding is considered independent if it is separate and distinct from federal law.'" Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995) (quoting Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994)). "'A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed.'" Id. (quoting Brecheen, 41 F.3d at 1353) (internal quotations omitted).

In Oklahoma, "post-conviction relief is reserved only for the rare set of circumstances where a particular claim 'could not have been raised on direct appeal.'" Brecheen, 41 F.3d at 1349 n. 4; see Okla. Stat. tit. 22, § 1086. Here, it is clear that the state courts applied this well-established procedural bar rule in denying review of Petitioner's ineffective assistance of trial counsel and actual innocence claims. See Order Denying Post-Conviction Relief and Order Affirming Denial of Post-Conviction Relief, Petition, Unnumbered Exhibits. The rule applied by the state district court and the Oklahoma Court of Criminal Appeals is thus independent of federal law. The Oklahoma Court of Criminal Appeals' procedural bar rule is generally an adequate state ground for refusing to review a prisoner's collateral claims that were not asserted in a direct appeal

from a conviction. Odum v. Boone, 62 F.3d 327, 331 (10th Cir. 1995); Steele v. Young, 11 F.3d 1518, 1521-22 (10th Cir. 1993).

In English v. Cody, 146 F.3d 1257, 1263-64 (10th Cir.1998), the Tenth Circuit held that a procedural rule requiring an ineffective assistance of trial counsel claim to be raised on direct appeal can be adequate only if (1) the Petitioner had different trial and appellate counsel; and (2) the ineffectiveness claim could have been resolved "upon the trial record alone." In this case, Petitioner did have different counsel at trial and on appeal, Petition, p. 13, and the ineffectiveness claim could have been resolved by reference to the trial record.[6] Thus, Oklahoma's procedural bar rule is also adequate with regard to Petitioner's claim of ineffective assistance of trial counsel. Additionally, Petitioner's actual innocence claim could have been raised on direct appeal.

Petitioner can overcome the procedural bar only if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). "'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him....'" Steele v. Young, 11 F.3d 1518, 1522 (10th Cir. 1993)(quoting Coleman, 501 U.S. at 753).

### 2.   Ineffective Assistance of Appellate Counsel

---

[6]Petitioner has not claimed that his appellate counsel had any conflict of interest based on her working relationship with other members of the public defender's office, specifically Petitioner's trial counsel. Nor has he alleged that the Oklahoma County Public Defender's office has a policy against raising ineffective assistance of trial counsel claims on direct appeal. Thus, the undersigned concludes that for purposes of assessing Petitioner's ineffective assistance of trial counsel claims and the application of the procedural default doctrine, that trial and appellate counsel were separate. See Turrentine v. Mullin, 390 F.3d 1181, 1206 (10th Cir. 2004), cert. denied, 125 S. Ct. 2544 (2005).

Petitioner contends that he did not raise his ineffective assistance of trial counsel or his actual innocence claims on direct appeal due to the ineffective assistance of appellate counsel, an issue he addresses in Ground Three of the petition. Petition, p. 8, 9, 11A. "A showing that a defendant received ineffective assistance of counsel will establish cause excusing a procedural default," Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002), but to meet this standard, Petitioner must satisfy the familiar two-part test for ineffective assistance established in Strickland v. Washington, 466 U.S. 668, 688 (1984). Under Strickland, Petitioner "must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different." Hain v. Gibson, 287 F.3d 1224, 1231 (10th Cir. 2002). Application of Strickland to an ineffective assistance of appellate counsel claim requires the Court to "look to the merits of the omitted issue." Id.

"[I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, 'we look to the merits of the omitted issue,' generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance."

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citations omitted); accord Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004), cert. denied, 543 U.S. 1154 (2005). Unless there is a reasonable probability that the omitted claim would have resulted in Petitioner obtaining relief on appeal, there is no ineffective assistance of appellate counsel under the Sixth Amendment. Neill v. Gibson, 278 F.3d 1044, 1057 n. 5 (10th Cir. 2001).

Before looking to the merits of the omitted claims here, it must be noted that the Oklahoma Court of Criminal Appeals has already addressed Petitioner's claim of ineffective assistance of appellate counsel. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) therefore confines the Court's review to the question of whether that decision were contrary to or involved an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1); see also Turrentine v. Mullin, 390 F.3d 1181, 1202 (10th Cir. 2004), cert. denied, 125 S. Ct. 2544 (2005).

**3. Ineffective Assistance of Trial Counsel**

In Ground Two, Petitioner argues that he was denied the effective assistance of trial counsel as guaranteed by the Sixth Amendment. Petition, p. 7, Application for Post-Conviction Relief, p. 3-4. Specifically it appears that Petitioner believes he was denied the effective assistance of counsel because he had a conflict with his trial counsel, which resulted in him filing a complaint against her with the Oklahoma Bar Association. He further argues that he attempted to have counsel dismissed, but was unsuccessful. Petitioner argues that he requested that his counsel file a "motion for discovery" and a "motion to dismiss the second page," and that she failed to file either motion on his

14

behalf. Petitioner alleges that counsel failed to call the owner of the car as a witness, who could have testified that Petitioner was not the driver of the car. Petitioner contends that counsel was deficient in her performance by failing to question the officer who claimed that he saw Petitioner getting out of the driver's side of the car while at the same time driving at a high rate of speed, around a corner three or four car lengths back, at night, "in a [sic] all black neighborhood." Application for Post-Conviction Relief.

Petitioner's vague allegations regarding trial counsel's alleged ineffectiveness are insufficient to overcome the presumption of reasonableness. Petitioner alleges a conflict with trial counsel, but fails to indicate the source or the nature of the conflict. Although Petitioner alleges that he filed a complaint with the Oklahoma Bar Association he fails to provide a copy of the complaint or to indicate the resolution of the matter. Further, it appears that Petitioner filed a pro se motion to discharge his attorney prior to the start of the trial. Tr. Vol. I, p. 12. However, when given a chance to have his motion heard, Petitioner told the judge that he had talked to his attorney and wanted to withdraw his motion. Tr. Vol. I, p. 13. Thus, there was no reason for the trial court to make further inquiry and Petitioner did not raise this issue again during trial. Additionally, with regard to the motions that counsel allegedly failed to file, Petitioner has failed to allege sufficient facts from which it could be concluded that counsel was ineffective in failing to file the motions. Petitioner fails to provide any evidence such as an affidavit, from the owner of the vehicle to support his theory that Petitioner was not driving. Furthermore, because the owner was not in the vehicle at the time of the arrest it is impossible to determine from Petitioner's skeletal allegations that the owner would actually have

known who was driving. In fact, on cross-examination, Lieutenant Butler testified that the owner of the vehicle said he had loaned it to Petitioner. Tr. Vol. II, p. 163. The only allegation that is sufficiently specific to address on the merits is Petitioner's contention that counsel did not sufficiently challenge the officers' testimony identifying Petitioner as the driver of the Honda Prelude, a claim that lacks merit. Therefore, appellate counsel was not ineffective in failing to raise the issue on direct appeal.

Review of the transcript reveals that trial counsel did challenge the officers' recollections and their ability to identify the Petitioner as the person who exited from the driver's side at every opportunity during the trial. Counsel first raised this issue during opening statements, pointing out to the jury that there would be no forensic evidence to identify Petitioner as the driver of the car. Tr. Vol. II, p. 18-19. Counsel also sought to elicit testimony from Lieutenant Butler to explain that the statement Petitioner made indicating that "D told me to run" referred to running, not driving away from the police. Tr. Vol. II, p. 167-69. While cross-examining Officer Barney, counsel reinforced the officer's inability to identify any person as the driver, and questioned his ability to identify Petitioner as the person who exited from the driver's side of the car, especially in light of the fact that both men were black males of medium build, and one of the men was never found. Tr. Vol. II, p. 75, 78, 80-81, 84, 90, 94. During the cross-examination of Officer Doyle, Petitioner's counsel questioned his ability to recognize Petitioner as the driver of the car, or to identify Petitioner outside the context of the arrest. Tr. Vol. II, p. 116, 120-28, 133. During closing argument counsel repeatedly emphasized the officers' inability to identify a driver of the car or to directly identify Petitioner as the driver of the

vehicle. Tr. Vol. III, p. 27-36. In fact, she emphasized that the whole case boiled down to who was the driver of the vehicle. Tr. Vol. III, p. 35.

It is apparent that Petitioner's counsel challenged the ability of the arresting officers to identify Petitioner as the driver of the vehicle. In light of this strategy, Petitioner's ineffective assistance of trial counsel claim must fail in this regard. Additionally, although Petitioner alleges that counsel was ineffective, he was acquitted by the jury of one charge, driving under the influence, which indicates that the jury responded to counsel's arguments. Because Petitioner's only discernible claim of ineffective assistance of trial counsel lacks merit, appellate counsel was not constitutionally ineffective in failing to raise the issue on direct appeal. Accordingly, Petitioner cannot rely on the ineffective assistance of appellate counsel to overcome the procedural bar with regard to his ineffective assistance of trial counsel claim or as an independent basis for relief.

### 5. Actual Innocence

In Ground Five, Petitioner argues that he is actually innocent, a claim not raised on direct appeal and held by the Oklahoma Court of Criminal Appeals to be barred. The Tenth Circuit has made clear that "an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus." LaFevers v. Gibson, 238 F.3d 1263, 1265 n. 4 (10th Cir.2001); see also Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional

violation occurring in the underlying state criminal proceeding."). Petitioner acknowledges this legal concept in his reply brief and states that Ground Five is a reiteration of his claim for the sufficiency of the evidence. Petitioner's Reply to Respondent's Response to Petition for a Writ of Habeas Corpus, p. 6. Because such a claim does not, standing alone, support the granting of a writ of habeas corpus, Petitioner's request for habeas corpus relief should be denied.

Furthermore, to the extent Petitioner is alleging that appellate counsel was ineffective because she failed to raise a claim of actual innocence on direct appeal, the undersigned concludes that no such claim exists under Oklahoma law. Webb v. State, 538 P.2d 1054, 1057 (Okla.Crim.App. 1975) (where there is sufficient evidence to support a jury's finding of guilt, the Court will not invade the province of the trier of fact and make a determination of the Defendant's guilt or innocence.) Petitioner's appellate counsel challenged the sufficiency of the evidence, and if this claim is truly a reiteration of the sufficiency of the evidence claim, counsel cannot be faulted because this claim was indeed raised on direct appeal.

Finally, although actual innocence is not an independent claim, a Petitioner may allege actual innocence to support the theory that a fundamental miscarriage of justice will occur if the Court does not consider his claim. Coleman, 501 U.S. at 750. The fundamental miscarriage of justice exception is, however, "an extremely narrow exception, implicated only in 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Ballinger v. Kerby, 3 F.3d 1371, 1375 (10th Cir. 1993) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

"To prevail, [Petitioner] must identify evidence that affirmatively demonstrates his innocence." Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999). Petitioner has wholly failed to identify evidence which affirmatively demonstrates his innocence, speculating that the person from whom the car was borrowed would have testified that Petitioner was not driving the car. Petitioner provides no information from which the Court can identify that person and no basis from which it can be concluded that the car's owner would have personal knowledge of who was driving at the time of the attempted traffic stop.[7]

Because Petitioner has failed to establish either cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default of Grounds Two and Five, the undersigned recommends that those claims be denied as barred. Additionally, Petitioner has failed to establish that the Oklahoma Court of Criminal Appeals' determination with regard to Petitioner's Ground One and Ground Three was contrary to or an unreasonable application of clearly established federal law. Finally, Petitioner is not entitled to relief on Ground Four, because although the Oklahoma Court of Criminal Appeals retroactively applied Easlick to his case, this application was harmless in light of the evidence.

**RECOMMENDATION**

For these reasons, the undersigned recommends that the petition for writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and

---

[7] It is also noted that according to Officer Barney, Petitioner admitted he was driving the car, and the other person in the car was a passenger. Tr. Vol. I, p. 161. The trial judge sustained Petitioner's objection to this testimony and Officer Barney was precluded from offering the evidence to the jury. Tr. Vol. I, p. 176.

Recommendation with the Clerk of this Court by June 6, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 17th day of May, 2006.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE